IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **SHERRY L. PITRONE**,  Plaintiff,  v.  **MICHAEL J. ASTRUE**, Commissioner of Social Security,  Defendant. | **Civil Action No. 10-623**  **Judge Arthur J. Schwab** |

## MEMORANDUM OPINION

**I.     Introduction**

Plaintiff, Sherry Pitrone (hereinafter "Plaintiff"), brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) of the Social Security Act ("the Act"), seeking review of the final determination of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB"). Consistent with the customary practice in the Western District of Pennsylvania, the parties have submitted cross motions for summary judgment on the record developed at the administrative proceedings. After careful consideration of the Administrative Law Judge's ("ALJ") decision, the memoranda of the parties, and the entire record, the Court will grant the Commissioner's Motion for Summary Judgment and deny Plaintiff's Motion for Summary Judgment.

## II. Procedural History

Plaintiff filed an application for DIB on July 9, 2007, alleging disability beginning on March 1, 1998. R. at 97-104. Plaintiff's claim was denied on October 12, 2007 and she thereafter requested a hearing. R. at 49-52, 55-56. The hearing was held on August 21, 2009 before ALJ Donald Graffius. R. at 18-46. Plaintiff, appearing with her attorney, Teresa Rerko, testified at the hearing along plaintiff's husband, Richard Pitrone and the vocational expert, Dr. Joseph Bentivania. *Id*.

The ALJ issued a decision on September 2, 2009, finding that Plaintiff was not disabled. R. at 10-16. The ALJ found that Plaintiff was capable of performing a full range of work at all exertional levels but with nonexertional limitations. *Id*. The ALJ found that plaintiff could perform her past relevant work as a baker's helper. *Id*. Additionally, the ALJ found that Plaintiff could perform other jobs that exist in significant numbers in the national economy such as collator, assembler, candy inspector and ticket printer. *Id*. On April 9, 2010, the Appeals Council affirmed the ALJ's decision, thus becoming the final decision of the Commissioner. R. at 1-5. Plaintiff then filed her complaint herein seeking judicial review of the Commissioner's final decision.

## III. Statement of the Case

In the decision dated September 2, 2009, the ALJ made the following specific findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2012.

2. The claimant has not engaged in "substantial gainful activity" since March 1, 1998, the alleged onset date (20 C.F.R. 404.1520 (b), 404.1571 *et seq*).

3. The claimant has the following severe impairments: bilateral moderately severe to severe mixed hearing loss (20 C.F.R. 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R.404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to occupations which do not require bilateral or fine hearing capability, frequent telephone communications, or a need to converse over excessive background noise.

6. The claimant is capable of performing past relevant work as a baker's helper. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 C.F.R. 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from March 1, 1998 through the date of this decision (20 C.F.R. 404.1520(f)).

R. at 10-16.

IV. **Standards of Review**

Judicial review of the Commissioner's final decisions on disability claims is provided by statute. 42 U.S.C. §§ 405(g)[1] and 1383(c)(3)[2]. Section 405(g) permits a district court to review transcripts and records upon which a determination of the Commissioner is based. Because the

---

[1]Section 405(g) provides in pertinent part:
Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action ... brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business ...
42 U.S.C. § 405(g).

[2]Section 1383(c)(3) provides in pertinent part:
The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.
42 U.S.C. § 1383(c)(3).

standards for eligibility under Title II (42 U.S.C. §§ 401-433, regarding Disability Insurance Benefits, or "DIB"), and judicial review thereof, are virtually identical to the standards under Title XVI (42 U.S.C. §§ 1381-1383f, regarding Supplemental Security Income, or "SSI"), regulations and decisions rendered under the Title II disability standard, 42 U.S.C. § 423, are pertinent and applicable in Title XVI decisions rendered under 42 U.S.C. § 1381(a). *Sullivan v. Zebley*, 493 U.S. 521, 525 n. 3 (1990); *Burns v. Barnhart*, 312 F.3d 113, 119 n. 1 (3d Cir.2002).

Substantial Evidence

When reviewing a decision denying SSI and DIB, the district court's role is limited to determining whether substantial evidence exists in the records to support the ALJ's findings of fact. *Burns*, *supra*. If supported by substantial evidence, the Commissioner's factual findings must be accepted as conclusive. *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir.1995); *Wallace v. Secretary of HHS*, 722 F.2d 1150, 1152 (3d Cir.1983). The district court's function is to determine whether the record, as a whole, contains substantial evidence to support the Commissioner's findings. *See Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir.1994) (citing *Richardson v. Perales*, 402 U.S. 389 (1971)). The Supreme Court has explained that "substantial evidence" means "more than a mere scintilla" of evidence, but rather, is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (citation omitted). *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir.2005); *Ventura*, 55 F.3d at 901 (quoting *Richardson*); *Stunkard v. Secretary of HHS*, 841 F.2d 57, 59 (3d Cir.1988).

The Court of Appeals for the Third Circuit has referred to this standard as "less than a preponderance of the evidence but more than a mere scintilla." *Burns,* 312 F.3d at 118, quoting *Jesurum v. Secretary of the Dep't of Health and Human Servs.*, 48 F.3d 114, 117 (3d Cir.1995). "A

4

single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir.1993), quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir.1983). The substantial evidence standard allows a court to review a decision of an ALJ, yet avoid interference with the administrative responsibilities of the Commissioner. *See Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir.1983).

In reviewing the record for substantial evidence, the district court does not weigh the evidence or substitute its own conclusions for those of the fact finder. *Rutherford*, 399 F.3d at 552. In making this determination, the district court considers and reviews only those findings upon which the ALJ based his or her decision, and cannot rectify errors, omissions or gaps in the medical record by supplying additional findings from its own independent analysis of portions of the record which were not mentioned or discussed by the ALJ. *Fargnoli v. Massarini*, 247 F.3d 34, 44 n. 7 (3d Cir.2001) ("The District Court, apparently recognizing the ALJ's failure to consider all of the relevant and probative evidence, attempted to rectify this error by relying on medical records found in its own independent analysis, and which were not mentioned by the ALJ. This runs counter to the teaching of *SEC v. Chenery Corp.*, 318 U.S. 80 (1943), that '[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.'" Id. at 87; parallel and other citations omitted).

Five Step Determination Process

To qualify for DIB under Title II of the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *Kangas v. Bowen*, 823 F.2d 775,

5

777 (3d Cir.1987); 42 U.S.C. § 423(d)(1) (1982). Similarly, to qualify for SSI, the claimant must show "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1383c(a)(3)(A).

When resolving the issue of whether a claimant is disabled and whether the claimant is entitled to either DIB or SSI benefits, the Commissioner utilizes the familiar five-step sequential evaluation. 20 C.F.R. §§ 404.1520 and 416.920 (1995). *See Sullivan*, 493 U.S. at 525. The Court of Appeals for the Third Circuit summarized this five-step process in *Plummer v. Apfel*, 186 F.3d 422 (3d Cir .1999):

> In *step one*, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied.... In *step two*, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520©. If the claimant fails to show that her impairments are "severe", she is ineligible for disability benefits.
>
> In *step three*, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. *Step four* requires the ALJ to consider whether the claimant retains the residual functional

capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work....

If the claimant is unable to resume her former occupation, the evaluation moves to the final *step [five]*. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ *must analyze the cumulative effect of all the claimant's impairments* in determining whether she is capable of performing work and is not disabled. The ALJ will often seek the assistance of a vocational expert at this fifth step...

*Plummer*, 186 F.3d at 428 (italics supplied; certain citations omitted). *See also Rutherford*, 399 F.3d at 551 ("In the first four steps the burden is on the claimant to show that she (1) is not currently engaged in gainful employment because she (2) is suffering from a severe impairment (3) that is listed in an appendix (or is equivalent to such a listed condition) or (4) that leaves her lacking the residual functional capacity ("RFC") to return to her previous employment (Reg. §§ 920(a) to (e)). If the claimant satisfies step 3, she is considered per se disabled. If the claimant instead satisfies step 4, the burden then shifts to the Commissioner at step 5 to show that other jobs exist in significant numbers in the national economy that the claimant could perform (Reg. § 920(f)).").

Thus, a claimant may demonstrate that his or her impairment is of sufficient severity to qualify for benefits in one of two ways:

(1) by introducing medical evidence that the claimant is disabled *per se* because he or she meets the criteria for one or more of a number of serious Listed Impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1, or that the impairment is *equivalent* to a Listed Impairment. *See Heckler v. Campbell*, 461 U.S. 458, 460 (1983); *Stunkard*, 841 F.2d at 59; *Kangas,* 823 F.2d at 777 (Steps 1-3); or,

(2) in the event that claimant suffers from a less severe impairment, he or she will be deemed disabled where he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy...." *Campbell*, 461 U.S. at 461 (citing 42 U.S.C. § 423(d)(2)(A)). In order to prove disability under this second method, plaintiff must first demonstrate the existence of a medically determinable disability that precludes him or her from returning to his or her former job (Steps 1-2, 4). *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777. Once it is shown that he or she is unable to resume his or her previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given plaintiff's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Campbell*, 461 U.S. at 461; *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir.2003); *Stunkard*, 842 F.2d at 59; *Kangas*, 823 F.2d at 777.

V.   **Discussion**

Plaintiff raises two arguments as to why the ALJ's decision denying DIB lacks the support of substantial evidence in the record. First, Plaintiff argues that the ALJ erred by improperly rejecting medical evidence based on the ALJ's own speculative inferences. Second, Plaintiff argues that the ALJ improperly considered Plaintiff's activities of daily living as supporting the conclusion that Plaintiff was not disabled. The Court will address each argument in turn.

1. *Whether the decision of the ALJ was based on impermissible speculative inferences*

In the decision of ALJ, he found that plaintiff's lack of intensive treatment for her hearing loss indicated that her severe impairment was not totally debilitating. Plaintiff points to this finding as being a speculative inference on the part of the ALJ and thus an impermissible finding. Indeed, an ALJ can only reject a treating physician's opinion on the basis of contradictory medical evidence, not on the ALJ's own credibility judgments, speculation or lay opinion. *Morales v. Apfel*, 225 F.3d 310, 317-18 (3d Cir.2000). The ALJ must weigh conflicting medical evidence and can chose whom to credit, but "cannot reject evidence for no reason or for the wrong reason." *Id.* at 317, *quoting Plummer*, 186 F.3d at 429 (additional citations omitted). Furthermore, the ALJ must consider all medical evidence in the record and provide adequate explanations for disregarding or rejecting evidence, especially when testimony of the claimant's treating physician is rejected. *See Wier on Behalf of Wier v. Heckler*, 734 F.2d 955, 961 (3d Cir.1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir.1981). He or she must also give serious consideration to the claimant's subjective complaints, even when those assertions are not confirmed fully by objective medical evidence. *See Mason v. Shalala*, 994 F.2d 1058, 1067-68 (3d Cir.1993); *Welch v. Heckler*, 808 F.2d 264, 270 (3d Cir.1986).

Here, the ALJ addressed plaintiff's lack of intensive treatment in following manner:

> The foregoing discussion of the medical evidence does not support the claimant's allegations of disabling subjective symptoms. Moreover, the claimant's course of treatment does not support the claimant's subjective allegations of disabling hearing loss. The treatment for her bilateral hearing loss has been essentially routine and conservative in nature. Although the claimant states that she suffers from disabling hearing loss she has managed to work 13 hours a week as a child care provider since March 1998. In this position she greets and interacts with parents and children on a daily basis and has functioned reasonably well in this position for over a decade. The claimant claims she has suffered from progressively declining hearing

9

> loss; however, she did not purchase her hearing aids until April, 2007, and Dr. Al-Rawi found that with the hearing aids the claimant functioned within normal limits of voice quality, speech and communication. Moreover, Mr. Plucker found that with the use of the hearing aids the claimant has only mild to moderate hearing loss with speech recognition thresholds of 30dBHL. Finally, if the claimant was experiencing the degree of disabling hearing loss she alleges, it seems likely that she would have sought more intensive treatment.

R. at 14. Based on this discussion, the ALJ properly weighted and considered the medical evidence and was able to conclude based on the evidence found in the record that the severity of plaintiff's symptoms were less severe than alleged. The ALJ also explicitly considered the examination reports of Dr. Mouwafak Al-Rawi and plaintiff's testimony concerning her ear infections and based his RFC findings based on that evidence. R. at 12-15. As a result, in reviewing the decision of the ALJ and the medical record as a whole, the ALJ did not impermissibly base his decision on his own speculative inferences.

   *2.   Whether the ALJ improperly relied on Plaintiff's activities of daily living*

Plaintiff's second argument is that the ALJ's reliance on plaintiff's activities of daily living was erroneous because they do not indicate that plaintiff is capable of performing substantial gainful activity.

Is it often repeated that "[d]isability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity." *Smith v. Califano*, 637 F.2d 968, 971 (3d Cir.1981). Furthermore, a claimant's ability to engage in sporadic activities of daily living cannot be equated with an ability to perform the duties of a full-time job. *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir.1988). Nevertheless, a claimant's activities of daily living can be properly

considered by an administrative law judge for the purpose of evaluating a claimant's credibility. *Zulinski v. Astrue*, 538 F.Supp.2d 740, 753 (D.Del.2008).

Here the ALJ stated:

> The claimant also engages in a wide range of daily activities that do not support her subjective allegations of disabling hearing. The claimant stated she lives a very normal lifestyle that enables her to take care of herself independently as well as her husband and 3 grandchildren. The claimant can prepare her own meals, do the dishes, and the laundry. The claimant is capable of cleaning, cooking, ironing, scrubbing the floors, mowing the grass with a tractor or a push mower, and trimming the shrubs. The claimant possesses a valid drivers license and commutes to and from work, she watches television for 3 to 4 hours per day, plays games on the computer for 1 hour per day, and goes shopping from anywhere between a half hour up to 4 hours. Also as discussed above, she works part time as a child care provider.

R. at 14. Plaintiff argues that her ability to perform activities of daily living are not relevant to her severe impairment because she does not allege any exertional limitations. The ALJ's discussion, however, does indicate that plaintiff's lifestyle has not been severely impacted by her hearing loss and furthermore that she has been able to continue to work part time. Indeed, plaintiff stated that if she were to work at a large day care center where she would not have to work alone, she would be able to work there full time. R. at 27.

Plaintiff further argues that the ALJ should not have considered plaintiff's ability to "watch" television as indicative that she was not disabled since she testified that she only watches televison with closed captioning. R. at 40. There is no indication, however, that the ALJ ignored any evidence or failed to fully consider all of plaintiff's limitations arising from her hearing loss. Thus, there is was no err by the ALJ in recounting that plaintiff was able to watch television. As a result, when

considering the record as a whole, the ALJ's decision is supported by substantial evidence in the record.

**VI.     Conclusion**

When considering the record as a whole, substantial evidence supports the ALJ's decision on non-disability, thus the final decision of the Commissioner must be affirmed. Plaintiff's motion for summary judgment will be denied, the Commissioner's motion for summary judgment will be granted.

An appropriate order will follow.

*s/ Arthur J. Schwab*
Arthur J. Schwab
United States District Judge

Dated:      October 12, 2010
cc:         All counsel of record.